# Illinois Official Reports

## Appellate Court

---

### *People v. Argueta*, 2015 IL App (1st) 123393

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELISEO ARGUETA, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3393 |
| Filed | July 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-14944; the Hon. Noreen Love, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Rachel Moran, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a bench trial, defendant, Eliseo Argueta, was convicted of three counts of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2008)); six counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2008)); and nine counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(b), (c)(1)(i), (c)(1)(ii) (West 2008)). The trial court sentenced Argueta to seven years' incarceration for each of the predatory criminal sexual assault convictions, to be served consecutively. The remaining counts (IV through XVIII) merged. The sole issue on appeal relates to whether, after the State had rested, the trial court properly refused Argueta's request for an interpreter for his own testimony at trial. Argueta, a native Spanish speaker and El Salvador citizen who described himself as "bilingual," repeatedly declined an interpreter during numerous interactions with the court the year before trial. On the record before us, we find that the trial court did not abuse its discretion by refusing Argueta's request to testify in Spanish at his trial.

¶ 2                                    BACKGROUND

¶ 3    Because of the sensitive nature of the subject of this appeal, we summarize only the portions of the record relevant to the issue presented.

¶ 4                                      Pretrial

¶ 5    Argueta was charged by indictment with three counts of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2008)); six counts of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2008)); and nine counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(b), (c)(1)(i), (c)(1)(ii) (West 2008)). On September 3, 2009, Argueta, represented by an assistant public defender, was arraigned in English.

¶ 6    On January 11, 2010, with an interpreter present in court, Argueta's new assistant public defender indicated that Argueta understood English "when the situation is not complicated like today." The following colloquy between the trial court and Argueta ensued:

"Q. *** Do you understand English, sir?

A. Not 100 percent.

Q. It is easier for you if you have the presence of the interpreter?

A. Sometimes.

Q. Now, with respect to being able to discuss this without your lawyer, are you comfortable doing it without the interpreter?

A. I believe so.

Q. If there are any problems and you feel that you can't quite understand anything your attorney is saying, I am sure your lawyer will make sure that when you come back you will have the interpreter so that the two of you can actually sit down and discuss the matter at length."

¶ 7    An interpreter assisted at status hearings on March 3, April 12, June 7, July 29, August 24, and December 7, 2010, but none appeared on September 27 and November 4, 2010. On January 20, 2011, Argueta's defense attorney represented to the court that Argueta did not need a Spanish interpreter: "I want to make the record clear. He doesn't need a Spanish

interpreter. Your Honor, Mr. Argueta is before the Court. I have spoken with Mr. Argueta a couple of times now in English, and Mr. Argueta indicates to me he does not need a Spanish interpreter any more." The trial court queried: "Is that accurate, sir?" and Argueta responded "Yes."

¶ 8 On February 22, 2011, with an interpreter present, the trial court indicated on the record that on the last court date that she and Argueta "had a conversation" and he "did not need the services of the Spanish interpreter. Apparently he understood what was going on quite well." Asked if that was correct, Argueta responded, "The last time, yeah." The following occurred:

"Q. So you understand what's going on?

A. A little. Sometimes not a hundred percent sure.

Q. Okay. He speaks English quite well actually."

The trial court then dismissed the interpreter.

¶ 9 At a status hearing on March 14, Argueta's attorney stated on the record: "[I]t has been established now that Mr. Argueta does speak English." On May 16, the defense attorney stated to the trial court: "On the previous court date you spoke to Mr. Argueta, and he indicated he didn't need a Spanish interpreter."

¶ 10 On June 13, Argueta requested a conference regarding a guilty plea as provided by Illinois Supreme Court Rule 402(a) (eff. July 1, 1997). The trial court addressed Argueta in English and asked four times whether he understood its admonishments; he responded "yes" each time. After the conference, Argueta, through his attorney, requested a month continuance "to think about it" because he wanted to contact his family.

¶ 11 On July 15, August 17, September 12, and October 17, Argueta was present without an interpreter at status hearings. On October 17, defense counsel requested a continuance to accept or deny the plea offer. The trial court granted one final continuance, addressing Argueta directly:

"Mr. Argueta, I'm going to leave this offer open for only one more date. If you do not accept the offer, then our attorney will file an answer and we'll get the matter set for trial.

Do you understand?"

Argueta responded "yes."

¶ 12 On November 29, Argueta, through counsel, rejected the plea offer and the matter was continued for status.

¶ 13 On February 8 and 15, 2012, Argueta was present with counsel and without an interpreter present, the trial court granted short continuances. Argueta responded "[o]kay" when the trial court addressed him directly.

¶ 14 On February 22, Argueta's counsel requested another continuance, telling the trial court: "There were some difficulties initially with him requiring only a Spanish interpreter to communicate. He does not need a Spanish interpreter." Counsel then represented to the court that Argueta had just informed him of a new witness who "for his profession travels out of the state and occasionally out of the country." The trial court granted the continuance.

¶ 15 On March 8, defense counsel, with Argueta present, stated: "Early on in this case Mr. Argueta indicated that he needed a Spanish interpreter but for over a year now, he speaks English, Your Honor, very well. He said he doesn't need a Spanish interpreter." The trial court

commented on the length the case was pending on the court's call (2½ years) and the fact that Argueta just informed his attorney of new witnesses but provided only names and telephone numbers. Defense counsel was unable to locate the witnesses. The trial court remarked:

> "[Argueta] was aware of this information when he got arrested on this case. For him to wait *** more than two years to tell his lawyer about witnesses, I don't know that this is just grasping at straws or what the situation is, but this can't go on forever. I can't keep this case on the call doing nothing for you to look for witnesses that may or may not exist; who may or may not have any information concerning this case. And nobody knows where these witnesses are."

¶ 16  At a hearing on June 18 with an interpreter present, the assistant State's Attorney inquired whether Argueta needed an interpreter. The trial court asked the interpreter about Argueta's need for an interpreter, and the interpreter replied, "I believe the sheriff asked, and he said he does not need [one]." The trial court then asked Argueta directly; Argueta replied "no."

¶ 17  After two more continuances, the trial got underway on September 24. Without an interpreter present, Argueta waived his right to a jury trial, answering "yes" to all questions posed by the trial court. The assistant State's Attorney asked: "Judge, could we also inquire again about the Spanish interpreter?" The trial court stated: "Okay. Well, no doubt he has answered every question in English. You do not need the services of a Spanish interpreter, is that correct?" Argueta answered, "No, I don't." And, the trial commenced.

¶ 18                                    Trial Testimony Relevant to Issue

¶ 19  During the State's case-in-chief, Cicero police department detective Allan Pineda, who is bilingual, testified that he was assigned to investigate this case, and on July 22, 2009, he spoke to Argueta by telephone. Pineda stated that during the interview Argueta spoke "mostly Spanish, but also some English."

¶ 20  After the State rested, Argueta testified. Before he was sworn in, his counsel told the trial court that he wanted to testify in Spanish because he would feel "more comfortable." The trial court denied his request remarking, "He has indicated to this Court, he has proven to this Court that he's very fluent in English. He has sat through this entire trial listening to all of the testimony in English. He will testify in English."

¶ 21  On direct examination, Argueta testified that he spanked his children sometimes with his hand, sometimes a sandal, and sometimes a belt. Argueta stated he hit R.A. with a closed fist around May 2009 because he "found that she was doing something that she's not supposed to do." After checking his cell phone records, Argueta discovered that R.A. was talking on her cell phone to a 20-year-old man. Argueta indicated he did not understand when defense counsel asked, "Did you learn that he was an adult?" Argueta answered "yes" after defense counsel rephrased the question as "Did you learn that he was over 20?" When Argueta discovered the man's age, he stated that he "beat" R.A. Argueta then indicated he did not understand the question "[H]ad you hit [R.A.] on previous occasions?" Defense counsel rephrased as follows: "Had you ever spanked [R.A.] other than the time you took her cell phone away from her?" Argueta answered "yes."

¶ 22  Defense counsel asked, "In–at the end of June, June 30th of 2009–at the end of June, very early July, were you told that you had to move out of your home?" Argueta indicated he did not understand the question. Defense counsel then asked, "Were you told by your wife that you

- 4 -

had to move out of the home in order for [R.A.] to return?" Argueta indicated he did not understand. Defense counsel then asked a series of questions regarding Argueta's going to the Cicero police station in July, all of which Argueta answered.

¶ 23 During cross-examination, Argueta did not understand the question "[w]ere you closest with your brother Joe?" The assistant State's Attorney rephrased: "Of your three brothers were you closest to your brother Joe?" The trial court overruled defense counsel's objection to the new question. Argueta asked, "If I'm more closer to him?" and then answered, "Yes. Because he's older. That's why I–" whereupon the assistant State's Attorney interrupted his answer.

¶ 24 Moments later, the following colloquy between the assistant State's Attorney and Argueta ensued:

"Q. If [R.A.] went [to live] with Joe, would you be able to see her then?

A. I don't remember. If I see her?

Q. Would you be able to?

A. I don't understand the question.

Q. After you signed this document saying To Whom It May Concern, you want [R.A.] to go live with Joe, you knew you would be able to see her at your mother and Joe's house, correct?

A. Yes."

¶ 25 On recross, the assistant State's Attorney asked, "And did you have court proceedings that were instituted in this–against you–or involving you didn't begin until after you were arrested on this case [*sic*]?" Argueta answered, "I don't understand." The trial court then requested counsel to rephrase, remarking "he didn't understand what you asked him." The question was rephrased: "There was no juvenile court involvement until after you were arrested on this case?" Argueta then answered, "I don't remember. I really don't remember."

¶ 26 On September 25, the trial court found Argueta guilty of all 18 counts of the indictment.

¶ 27 Posttrial

¶ 28 On October 18, 2012, Argueta filed a motion for new trial, asserting that his request to testify in Spanish was denied by the trial court and that he subsequently was unable to understand "dozens of questions" asked by both the State and defense counsel. The trial court remarked:

"And I will specifically address paragraph 8 as far as the request to testify in Spanish. You know, one of the things is that prior to trial on many, many court dates the defendant did not have a Spanish interpreter. At trial the defendant did not have a Spanish interpreter and it was only when he wanted to testify that he indicated he wanted a Spanish interpreter. And there may have been questions that had to be rephrased, but they were rephrased to the extent where the defendant was able to understand what they were. That's not unlike many people who are English speaking who do not understand questions because they don't always understand the way in which the sentence is composed and they may not understand certain words within that sentence. And those are generally rephrased so that the person testifying can understand and respond. And the defendant had no problem responding once those questions were in some way reconstructed so that he could understand it."

¶ 29    The presentence investigation, completed in October 2012, indicated that Argueta was born in El Salvador and immigrated to the United States when he was 17 years old. He attended high school in El Salvador and obtained his general GED in Chicago. The report also stated that Argueta "add[ed] that he can read and write adequately, is bilingual and understands the court proceedings."

¶ 30    The trial court sentenced Argueta to seven years' incarceration for each of the first three counts, to be served consecutively. The remaining counts (IV through XVIII) merged. Argueta replied "Yeah" when asked by the trial court if he understood his "rights under appeal."

¶ 31                                    ANALYSIS

¶ 32    Criminal defendants have constitutional rights, implicit in the fifth, sixth, and fourteenth amendments of the United States Constitution, to be informed of the " 'nature and cause' of criminal accusations made against him" (*People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996)); to the effective assistance of counsel (*Strickland v. Washington*, 466 U.S. 668, 686 (1984)); to testify on his or her own behalf (*Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)); or to refuse to testify (*Harris v. New York*, 401 U.S. 222, 230 (1971)). A person's right to an opportunity to be heard in his or her defense is basic in our system of jurisprudence. See *In re Oliver*, 333 U.S. 257, 273 (1948). Without the aid of an interpreter, a defendant who speaks only a foreign language or with limited English proficiency, while having a physical presence in the courtroom, lacks a mental presence by his or her inability to understand or participate meaningfully in the proceedings. See *People v. Raczkowski*, 359 Ill. App. 3d 494, 498 (2005).

¶ 33    In the event that a defendant does not speak English, section 1 of the Criminal Proceeding Interpreter Act provides for the appointment of an interpreter:

> "Whenever any person accused of committing a felony or misdemeanor is to be tried in any court of this State, the court shall upon its own motion or that of defense or prosecution determine whether the accused is capable of understanding the English language and is capable of expressing himself in the English language so as to be understood directly by counsel, court or jury. If the court finds the accused incapable of so understanding or so expressing himself, the court shall appoint an interpreter for the accused whom he can understand and who can understand him." 725 ILCS 140/1 (West 2008).

The availability of the language assistance of an interpreter lies within the discretion of the trial court. *People v. Soldat*, 32 Ill. 2d 478 (1965). But, the Criminal Proceeding Interpreter Act lacks criteria for exercising that discretion. When a person with limited English proficiency asks for an interpreter, the court must rely on infrequent case law for guidance, a less than ideal situation in terms of consistency and predictability.

¶ 34    The trial court must consider "the factual question of whether an interpreter is needed; a trial court does not have the discretion to deny an interpreter to a defendant who needs one." *People v. Raczkowski*, 359 Ill. App. 3d 494, 498 (2005). "Where an abuse of that discretion deprives defendant of a basic right, a conviction will be reversed." *People v. Rivera*, 72 Ill. App. 3d 1027, 1039 (1979). An abuse of discretion may be shown where it appears from the record that the witness was not "understandable," "comprehensible," or "intelligible" such that the lack of an interpreter deprived defendant of a basic right. *People v. Bragg*, 68 Ill. App. 3d 622, 630 (1979). The trial judge sits in the best position to assess the witness's facility with the English language. *Id*.

¶ 35    Argueta argues that the trial court deprived him of his right to an interpreter during his testimony, focusing on a few statements he made just before he testified. This approach, though, ignores the larger picture established during the one-year period before trial during which he had numerous interactions with the trial court and repeatedly assured the trial court that he did not need an interpreter. We look to this court's decision in *People v. Herrero*, 324 Ill. App. 3d 876 (2001), which found the defendant was not actively excluded from the jury selection process but, rather, "chose to proceed in spite of the absence of an interpreter." *Id*. at 885.

¶ 36    Similarly, in *People v. Molina*, 94 Ill. App. 3d 233 (1981), the defendant had resided in the United States for more than 20 years, worked as a cab driver, and lived with his wife and child who, by their testimony, appeared to speak English clearly. Defense counsel expressed a willingness to proceed with trial without an interpreter for his client and, in fact, participated in the entire proceeding without objection. Additionally, the trial judge thoroughly inquired into the matter, and this court found that "as a whole" the defendant's testimony was sufficiently understandable. *Id*. at 239.

¶ 37    In *People v. McGinnis*, 51 Ill. App. 3d 273, 276 (1977), this court found that the failure to request an interpreter did not demonstrate incompetency of counsel. The testimony of the complaining witness, a Korean, was choppy and grammatically incorrect but its substance was understandable, and the trial court granted both sides latitude in their examinations of her in order to allow for the difficulties which she had in expressing herself.

¶ 38    Argueta's assertion in his motion for a new trial that he did not understand "dozens" of questions during his testimony overstates what actually occurred at trial. Argueta stated seven times that he did not understand questions posed during his testimony. Argueta avers that he "struggled" to answer other questions, citing instances in the record where he asked to have the question repeated after the trial court overruled an objection to the question. Argueta asserts that he gave an equivocal response in that he stated he understood English, but "not 100%." The record belies his argument.

¶ 39    Argueta's testimony demonstrates that rephrasing questions that he indicated he did not understand alleviated his confusion. Argueta answered "yes" readily when the question "Did you learn that he was an adult?" was rephrased as "Did you learn that he was over 20?" Similarly, Argueta indicated he did not understand the question "[H]ad you hit [R.A.] on previous occasions?" Argueta answered "yes" when the question was rephrased to "Had you ever spanked [R.A.] other than the time you took her cell phone away from her?"

¶ 40    On direct examination, when asked, "Did you get along with him? Did you and your brother Elias get along?" Argueta answered he did not understand "the word." But Argueta answered "no" when counsel rephrased the question: "Did you and your brother Elias–were there problems between the two of you?"

¶ 41    Argueta stated he did not understand two questions on direct regarding being told he had to move out of his house. His counsel, rather than clarifying, went on to another topic.

¶ 42    On cross-examination, Argueta did not understand the question "[w]ere you closest with your brother Joe?" Defense counsel's objection when the assistant State's Attorney rephrased to "Of your three brothers were you closest to your brother Joe?" was overruled. Argueta then answered "yes" to the question after asking "If I'm more closer to him?"

¶ 43    A short time later, the assistant State's Attorney asked if Argueta would be able to see R.A. if she were living with his brother Joe. Argueta's answer was: "I don't remember. If I see her?" The assistant State's Attorney asked, "Would you be able to?" Argueta responded he did not understand the question, but when the assistant State's Attorney asked the question as follows: "After you signed this document saying To Whom It May Concern, you want [R.A.] to go live with Joe, you knew you would be able to see her at your mother and Joe's house, correct?" Argueta responded: "Yes." We note that the last version of the question was fairly complicated.

¶ 44    Regarding the final instance, on recross, the assistant State's Attorney asked, "And did you have court proceedings that were instituted in this–against you–or involving you didn't begin until after you were arrested on this case [*sic*]?" Argueta answered, "I don't understand." After the question was rephrased: "There was no juvenile court involvement until after you were arrested on this case?" Argueta answered that he did not remember. We believe the difficulty was that the form of the question was confusing, illustrated by the trial court's request that counsel rephrase, as opposed to English comprehension. Indeed, the original question posed made no sense.

¶ 45    The record does not establish the need for an interpreter to translate while Argueta testified. A review of Argueta's testimony establishes that he gave appropriate responses to questions posed by the attorneys and the trial court. While it is true that at times he stated he did not understand a question, each time this occurred, he ultimately answered the question after it was repeated, rephrased, or broken down into parts. During the State's case-in-chief, defense counsel neither requested an interpreter nor objected to the lack of one. To the contrary, the trial got under way immediately after Argueta waived his right to a jury trial, answering "yes" to all questions posed by the trial court. The assistant State's Attorney then asked: "Judge, could we also inquire again about the Spanish interpreter?" The trial court asked, "You do not need the services of a Spanish interpreter, is that correct?" Argueta answered, "No, I don't," thereby asserting that he would proceed in English.

¶ 46    Moreover, even though presumably unfamiliar with the criminal justice system, as evidenced by the absence of a criminal record, Argueta's trial commenced over three years after his arrest, with many court appearances occurring as well as conferences with his attorney during this time. At pretrial proceedings, Argueta used an interpreter for 18 months, until, in January 2011, he began insisting that he did not need an interpreter. Over the course of a full year of pretrial proceedings, Argueta and his counsel repeatedly turned down the assistance of an interpreter. The trial court carefully preserved the record, questioning Argueta's ability to proceed in English, only refusing his request for an interpreter once–at the beginning of his own testimony at trial, after the State had rested. We also note that at his presentence interview held within three weeks of the conclusion of trial, Argueta described himself as "bilingual."

¶ 47    Argueta relies on *People v. Escalante*, 256 Ill. App. 3d 239, 245 (1994), where, in contrast to this case, the defendant spoke only Spanish and did not speak or understand any English. The trial court refused to wait for an interpreter who did not arrive until late in the direct examination of the State's second witness. The Second District Appellate Court held that the absence of the interpreter rendered the defendant not present during the testimony and, therefore, the trial court's refusal to wait for the interpreter violated defendant's sixth amendment right to be present at trial and confront the witnesses against him. *Id*. at 246. But, Argueta not only represented to the court that he did not need an interpreter, he demonstrated

that he understood and was able to intelligently communicate during earlier proceedings. That he sought an interpreter only for his own direct testimony cannot be considered in isolation from the rest of the trial and pretrial proceedings.

¶ 48 Argueta also relies on *People v. Starling*, 21 Ill. App. 3d 217 (1974), which presents an entirely different scenario and is inapposite. There, neither the trial judge nor the attorneys or defendant understood Spanish. *Id*. at 222. The trial court, in its discretion, appointed an interpreter for the complaining witness. *Id*. The interpreter appeared "ineffective and incompetent," and struggled. *Id*. Addressing the question of whether the complaining witness's testimony was understandable, comprehensible, and intelligible, the appellate court found an abuse of discretion in the selection of the interpreter, "which brought on an injustice: the denial of defendant's right to be confronted by the witnesses against him." *Id*. at 223. As already noted, Argueta demonstrated throughout the proceedings, both pretrial and during the trial testimony, that he understood and was able to intelligently communicate in English. *Starling* does not apply.

¶ 49 Nor does *United States v. Mayans*, 17 F.3d 1174 (9th Cir. 1994), cited by Argueta, require a different result. In *Mayans*, the Ninth Circuit held that the defendant's fifth amendment rights were violated. The defendant began to testify through an interpreter, but when he stated he had been in the United States for 20 years and spoke English, the trial judge interrupted and said "let's try it in English." The interpreter was withdrawn despite the defendant's claim that he still needed one and despite the trial court's lack of information as a basis on which to determine otherwise. Thus, the trial judge erred by insisting on evaluating appellant's language skills in the course of the trial itself and in front of the jury, a method that "undermined the purpose of the interpreter statute." *Id*. at 1180.

¶ 50 The record belies Argueta's contention on appeal. Significantly, defense counsel and Argueta both told the court that Argueta understood and spoke English and that he did not need an interpreter. The trial court had numerous opportunities to assess the language abilities of Argueta and on several occasions Argueta's English skills were placed on the record. The trial court admirably made an ample record from which to determine the sufficiency of Argueta's English for purposes of enabling him to communicate with his attorney and to reasonably understand and comprehend the pretrial proceedings and testimony at trial. Neither defense counsel nor Argueta contradicted the trial court's finding. It follows that Argueta was capable of testifying in English, and the record supports this conclusion. We find no abuse of discretion.

¶ 51 The judgment of the circuit court is affirmed.

¶ 52 Affirmed.