NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
June 27, 2022
Carla Bender
4th District Appellate
Court, IL

2022 IL App (4th) 200371-U

NO. 4-20-0371

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| JEAN FUKAMA-KABIKA, | ) | No. 15CF648 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Summary dismissal of petitioner's petition for postconviction relief was proper
since petitioner's claims of error attributed to ineffectiveness of appellate counsel
were waived and had no basis in law or fact even without waiver, and his claim of
error for correcting his mittimus had no basis in law.

¶ 2        Defendant, Jean Fukama-Kabika, appeals from the first stage dismissal of his

*pro se* petition for postconviction relief. After his conviction for criminal sexual assault, criminal

sexual abuse, and unlawful restraint in 2017, defendant was sentenced to consecutive seven- and

three-year terms along with a concurrent one-year sentence in the Illinois Department of

Corrections (DOC). Defendant's conviction and sentence were affirmed on direct appeal. During

the pendency of his appeal, defendant sought postconviction relief, alleging several substantive

and procedural errors by the trial court which denied him a fair trial, along with claims of

ineffective assistance of trial counsel. The trial court dismissed the petition at the first stage, finding it to be "frivolous, patently without merit." We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4             In May 2017, a jury convicted defendant of two counts of criminal sexual assault, one count of criminal sexual abuse, and one count of unlawful restraint. Defendant was sentenced to seven years in DOC on each of the sexual assault counts and three years on the sexual abuse count, with each sentence to be served consecutively to each other. He was also sentenced to one year in prison on the count of unlawful restraint, to be served concurrently with the other sentences.

¶ 5             On direct appeal, defendant raised four issues. He claimed: (1) the trial court erred in its Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), or *Zehr* instructions (see *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984)); (2) the trial court violated his constitutional right to a public trial when it excused one of defendant's "supporters" who was caught shaking hands with one of the jurors during a recess; (3) the trial court erred when it permitted the victim to be recalled in rebuttal and, in effect, repeating her emotional testimony before the jury; and (4) that defendant was denied a fair trial when the prosecutor improperly shifted the burden of proof to defendant and vouched for the victim's credibility during his closing argument. Finding none of the errors claimed by defendant, in August 2020, this court affirmed the trial court's judgment. See *People v. Fukama-Kabika*, 2020 IL App (4th) 170809-U, ¶ 1.

¶ 6             While his direct appeal was still pending, defendant filed the underlying petition for postconviction relief on July 17, 2020 (the record reveals two identical petitions file marked July 17 and July 20, 2020). The petition asserted eight claims of error: (1) that appellate counsel was ineffective for failing to properly raise the various issues being raised in the postconviction

petition; (2) that the trial court violated his constitutional rights by denying his motion to suppress his statements made to police in the absence of *Miranda* admonishments (see *Miranda v. Arizona*, 384 U.S. 436 (1966)); (3) that trial counsel was ineffective for failing to object to the State's improper presentation of rebuttal evidence; (4) that he was denied a fair trial "where the State was permitted to introduce unfounded and prejudice [*sic*] evidence via other witnesses that was hearsay"; (5) that he was deprived of an impartial jury due to improper *Zehr* admonishments; (6) that he was denied a fair trial based on comments by the State that shifted the burden of proof; (7) that he was denied a fair trial by the delayed disclosure of a witness by the State; and (8) that the cumulative effects of counsel's errors deprived defendant of a fair trial.

¶ 7       The trial court entered a written order on July 29, 2020, finding defendant's claims to be "frivolous, patently without merit," and it ordered the petition dismissed. Defendant filed a timely notice of appeal within 30 days of the trial court's order, and this appeal followed.

¶ 8                                        II. ANALYSIS

¶ 9       On appeal, defendant contends the trial court erred in dismissing his claims for postconviction relief at the first stage because he raised an arguable claim of ineffective assistance of appellate counsel. Specifically, defendant contends appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in denying his suppression motion. In addition, defendant contends the trial court erred in finding his claim to be premature due to the pendency of his direct appeal at the time. Lastly, defendant raises, for the first time, an allegation that the trial court lacked jurisdiction to correct a mittimus to reflect a term of mandatory supervised release (MSR) required by law. The State responds by asserting defendant failed to present a meritorious claim in his petition and the trial court had authority to amend the mittimus to reflect the statutory MSR term.

¶ 10                                    A. Postconviction Proceedings

¶ 11                  "The Post-Conviction Hearing Act [(Act)] provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL 122327, ¶ 12, 137 N.E.3d 763 (citing 725 ILCS 5/122-1(a) (West 2014)). "A postconviction proceeding is not a substitute for a direct appeal but rather is a collateral attack on a prior conviction and sentence. The purpose of the proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal." *Buffer*, 2019 IL 122327, ¶ 12 (citing *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007)).

¶ 12                  Once filed, a postconviction petition is subject to a three-stage adjudicatory process. *Harris*, 224 Ill. 2d at 125. At the first stage, section 122-2.1 of the Act directs the trial court to independently assess the substantive merit of the petition. *Harris*, 224 Ill. 2d at 125-26 (citing 725 ILCS 5/122-2.1 (West 2002)). If the court finds the petition is "frivolous" or "patently without merit," the Act requires that the court dismiss it, and this dismissal is a final order. 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). "A petition lacks an arguable basis in law when it is grounded in 'an indisputably meritless legal theory,' for example, a legal theory which is completely contradicted by the record." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1075 (2010) (quoting *Hodges*,

- 4 -

234 Ill. 2d at 16). A petition "lacks an arguable basis in fact when it is based on a 'fanciful factual allegation,' which includes allegations that are 'fantastic or delusional' or belied by the record." *Morris*, 236 Ill. 2d at 354 (quoting *Hodges*, 234 Ill. 2d at 16-17). Our review of a first-stage dismissal of a postconviction petition is *de novo* (*Buffer*, 2019 IL 122327, ¶ 12), affording no deference to the trial court's judgment or reasoning. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 22, 128 N.E.3d 978.

¶ 13                                 B. Ineffective Assistance of Counsel

¶ 14          Here, defendant contends he raised an arguable claim of ineffective assistance of appellate counsel. A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting *Strickland*, 466 U.S. at 688). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional error, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). " 'Effective assistance of counsel refers to competent, not perfect representation.' " *Evans*, 209 Ill. 2d at 220 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92, 473 N.E.2d 1227, 1240 (1984)). "[T]here is a strong presumption of

- 5 -

outcome reliability, so to prevail [on an ineffective assistance claim], a defendant must show that counsel's conduct 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *People v. Pineda*, 373 Ill. App. 3d 113, 117, 867 N.E.2d 1267, 1272 (2007) (quoting *Strickland*, 466 U.S. at 686).

¶ 15         "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000). As we noted above, this means defendant must show (1) appellate counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

¶ 16         Defendant claims appellate counsel was ineffective for failing to argue on direct appeal the trial court erred in denying the motion to suppress his statements to police. Defendant's pretrial motion to suppress statements was based primarily on the failure of police to Mirandize defendant before what he claimed was a custodial interrogation. In general terms, he claimed in the motion that any statements given were involuntary but did not attribute their involuntariness to language or culture. Instead, defendant claimed the "substantial language barrier" made any statements "wholly unreliable and incompetent," with no reference to involuntariness. Defendant's posttrial motion did not address this issue at all, referencing instead a motion to suppress evidence in only the most general terms. His postconviction petition, on the other hand, asserted only that his constitutional rights were violated by the trial court's failure to suppress statements taken without *Miranda* warnings, with no mention of involuntariness based on language or cultural differences. In both his listing of claims ("Claim Two") and what he captioned as his "Memorandum of Law and Findings of Fact," defendant expressly limited his allegation of error to the court's denial of his motion to suppress "taken without *Miranda*

protections." Now, on appeal, defendant argues counsel was ineffective for failing to argue the involuntariness of his statements to police due *primarily* to differences in language and culture—an issue never raised in the postconviction petition from which he appeals.

¶ 17          Under the Act, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2018); see also *People v. Jones*, 211 Ill. 2d 140, 145, 809 N.E.2d 1233, 1237 (2004). Defendant's postconviction claim of ineffective assistance of appellate counsel for failing to raise the trial court's error in denying his motion to suppress based on violations of *Miranda* is a claim separate and distinct from the one of involuntariness he asserts before this court. *People v. Banks*, 241 Ill. App. 3d 966, 978, 609 N.E.2d 864, 872 (1993) ("The standards established in *Miranda* 'have a separate constitutional status apart from considerations of voluntariness.' ") (quoting *People v. Doss*, 26 Ill. App. 3d 1, 14, 324 N.E.2d 210, 219 (1975)). As such, the voluntariness claim is waived.

¶ 18          Defendant makes no effort to argue this court should consider the issue notwithstanding waiver—such as under the plain error doctrine. Instead, he contends there was "evidence" his statement "was involuntary," should have been suppressed, and appellate counsel was ineffective for failing to so argue. Unfortunately, this was not the issue presented to the trial court in the petition for postconviction relief. As a result, defendant is foreclosed from arguing any exception to its waiver. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Defendant cannot claim one basis for error in his postconviction petition, then argue a separate error of constitutional magnitude when appealing the trial court's denial of his petition. 725 ILCS 5/122-3 (West 2018); see also *People v. Jones*, 213 Ill. 2d 498, 505, 821 N.E.2d 1093, 1097 (2004) (claims not raised on defendant's postconviction petition cannot be raised for the first time on appeal).

¶ 19        Even absent waiver however, defendant's claim fails. The basis of his assertion of ineffective assistance of counsel is the claimed error by the trial court in denying his motion to suppress. If there was no error in denying the motion, there is no error by counsel. We apply a two-part standard of review to a circuit court's decision on a motion to suppress. *People v. Timmsen*, 2016 IL 118181, ¶ 11, 50 N.E.3d 1092. The trial court's factual findings are upheld unless they are against the manifest weight of the evidence, but we review *de novo* the legal conclusions as to whether suppression was warranted. *Timmsen*, 2016 IL 118181, ¶ 11.

¶ 20        Here, the trial court heard substantial evidence regarding defendant's statements to police. The court was in the best position to assess the credibility of the witnesses and resolve any conflicts in testimony. *People v. Myers*, 66 Ill. App. 3d 934, 935, 384 N.E.2d 516, 518 (1978).

¶ 21        Evidence presented at the suppression hearing established officers spoke with defendant at his residence at 1:50 in the afternoon. Their expressed intent was to "get his side of the story." When met at the door, defendant was "sober and oriented" and "awake." He immediately agreed to speak with the officers, stepping out in either "boxer shorts" or "regular shorts." At the suppression hearing, counsel for defendant also argued that regardless of whether they were aware English was not defendant's first language, the victim told them he "speaks English well," but with an accent. When defendant agreed to step outside the apartment to talk with the officers, they detected no inability on his part to understand their questions or provide intelligent and appropriate responses. At no time during the "less than ten minute" conversation did defendant contend he did not understand, did not want to talk to the officers, or request the assistance of an interpreter. According to the officers, defendant "was conversing appropriately. He was using standard words and phrases and seemed to or appeared to understand everything

[they were] saying as well." The officers denied the use of any threats or coercion, maintaining defendant was cooperative throughout, and defendant never contended otherwise.

¶ 22    Once they heard defendant corroborate much of what the victim had said, the decision was made there was probable cause for an arrest. The officers acknowledged they did not read defendant his *Miranda* rights because the interview was "noncustodial" and after the interview there was no intent to question him further.

¶ 23    The State also presented the testimony of the person who hired defendant at the Champaign County Nursing Home, where he was working part-time while attending Parkland College as a full-time nursing student. She had no difficulty communicating with defendant in English during his interview and subsequent conversations on the job.

¶ 24    The trial court found defendant was not "in custody" at the time he was questioned by the police—the primary issue raised by the suppression motion. Defendant also argued that, even if not the product of custodial interrogation, his statements were still involuntary due to the language difference. The trial court found to the contrary when denying the motion, concluding there was sufficient evidence of defendant's ability to speak and understand English in a variety of contexts, including when questioned by police.

¶ 25    Defendant contends here the trial court's finding he "could adequately communicate in English stands in stark contrast to the court taking great care to ensure that [defendant] had access to a French interpreter throughout the hearing." Such an argument is disingenuous at its best because, upon the representations of counsel and/or a defendant that he cannot adequately communicate in English, any reasonably experienced trial court would have been remiss in failing to appoint an interpreter. While the determination of the need for an interpreter lies within the discretion of the trial court pursuant to section 1 of the Criminal

Proceeding Interpreter Act (725 ILCS 140/1 (West 2016)), as was noted in *People v. Argueta*, 2015 IL App (1st) 123393, ¶ 33, 36 N.E.3d 982, the Criminal Proceeding Interpreter Act does not provide the criteria for exercising that discretion. "The trial court must consider 'the factual question of whether an interpreter is needed; a trial court does not have the discretion to deny an interpreter to a defendant who needs one.' [Citation.] 'Where an abuse of that discretion deprives defendant of a basic right, a conviction will be reversed.' [Citation.]" *Argueta*, 2015 IL App (1st) 123393, ¶ 34.

¶ 26    Here, upon the representations of counsel and defendant that an interpreter was needed since the time of initial arraignment, the trial court was obligated to provide one or risk the possibility of reversing any subsequent conviction. Although it is true everyone else who dealt with defendant, either socially or in an employment setting, as well as the two police officers involved in his interview, said he spoke and understood English, the trial court, in a reasonable exercise of caution, allowed the appointment of an interpreter throughout. Defendant confuses the trial court's "great care" to avoid possible reversal, with "great care" to provide an interpreter. The court, after hearing the suppression evidence, concluded defendant was able to speak and understand English and that "his mastery of the English language was and is sufficient to understand the circumstances and to answer the questions that were asked." The court considered not only defendant's ability to converse intelligently with the officers outside his apartment, but also his employment interview, becoming certified as a nurse assistant, and his record of email conversations with the victim.

¶ 27    Based on the record, there is no reason to conclude the trial court's findings were against the manifest weight of the evidence and as a result, absent a custodial interrogation, there was no basis for suppression for either a *Miranda* violation or involuntariness. To establish

ineffective assistance based on appellate counsel's failure to argue on direct appeal the trial court erred in denying the suppression motion, defendant would need to show "both that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." See *People v. Gayden*, 2020 IL 123505, ¶ 28, 161 N.E.3d 911 (citing *People v. Henderson*, 2013 IL 114040, ¶ 15, 989 N.E.2d 192). As we noted above, absent error in denying the motion, there was no error by appellate counsel in failing to argue it.

¶ 28          Defendant's additional claimed bases for concluding his statements were involuntary are waived as well, having never been raised before the trial court in his postconviction petition. *Jones*, 213 Ill. 2d at 505 (claims not raised in defendant's postconviction petition cannot be raised for the first time on appeal).

¶ 29                              C. Correcting the Mittimus

¶ 30          Next, defendant contends the trial court lacked the authority to correct the mittimus to reflect the actual term of MSR imposed by statute. Defendant incorrectly characterizes the trial court's clerical correction to his sentencing order as an untimely alteration of his sentence entered without jurisdiction.

¶ 31          At defendant's sentencing hearing on October 27, 2017, the trial court imposed the prison sentences referenced previously but failed to mention the statutory terms of MSR. The court's "Judgment-Sentence Order" (mittimus) filed on the same date lists the MSR for criminal sexual assault as three years. In February 2019, the record office supervisor for Danville Correctional Center, where petitioner was housed, sent a letter to the trial court pointing out how the mittimus incorrectly listed the MSR as three years when, by statute, it was "for a minimum of 3 years to a maximum of natural life." Accordingly, the trial court then issued, *nunc pro tunc* as

of the date of defendant's sentencing in October 2017, an amended mittimus correctly listing the MSR for criminal sexual assault as "3 years-natural life."

¶ 32         Even where both the sentencing order and the trial judge failed to mention an MSR term attached to a defendant's sentence, the plain language of section 5-8-1 of the Unified Code of Corrections (730 ILCS 5/5-8-1 (West 2004)) was found to provide for its inclusion as a part of any sentence imposed (excluding natural life) in *People v. McChriston*, 2014 IL 115310, ¶ 17, 4 N.E.3d 29. At that time, the statute read, in part, " 'Except where a term of natural life is imposed, every sentence shall include as though written therein a term in addition to the term of imprisonment.' " *McChriston*, 2014 IL 115310, ¶ 9 (quoting 730 ILCS 5/5-8-1(d) (West 2004)). This language was later amended, removing the phrase "as though written therein" and replacing it with the requirement that the MSR term "shall be written as part of the sentencing order." Pub. Act 97-531, § 5 (eff. Jan. 1, 2012). In *Round v. Lamb*, 2017 IL 122271, ¶ 16, 90 N.E.3d 432, the supreme court, addressing the situation where the trial court fails to include the MSR term *after* the amendment, found "the MSR term is included in the sentence as a matter of law and that the failure to include the term in the written sentencing order does not on its own invalidate the sentence or any part of it." The court further cited *People v. Viverette*, 2016 IL App (1st) 122954, ¶ 24, 54 N.E.3d 944, for its observation that reading both the preamendment language referenced in *McChriston* (section 5-8-1(d)(1)) and the postamendment language of section 5-4.5-15(c), makes it clear an MSR term is a mandatory component of a defendant's sentence imposed by the court. *Round*, 2017 IL 122271, ¶ 16.

¶ 33         Here, the mittimus contained an incorrect MSR for criminal sexual assault—three years, versus three years to life. The trial court was powerless to impose any term of MSR other than that provided by statute. *People v. Whitfield*, 217 Ill. 2d 177, 200-01, 840 N.E.2d 658, 672

(2005) (" '[T]he State has no right to offer the withholding of such a period as a part of the plea negotiations, and *** the court has no power to withhold such period in imposing sentence.' ") (quoting *People v. Brown*, 296 Ill. App. 3d 1041, 1043, 695 N.E.2d 1374, 1376 (1998)).

¶ 34　　　　The trial court's amendment to the mittimus was the equivalent of a "clerical error," and Illinois Supreme Court Rule 472 (eff. May 17, 2019) permits the circuit court to retain jurisdiction to correct clerical errors such as this, "resulting in a discrepancy between the record and the actual judgment of the court." The trial court imposed a sentence for criminal sexual assault, which by statute had to include an MSR of three years to life. The mittimus simply read three years and required correction. As such, the trial court had jurisdiction to issue a corrected mittimus, and defendant's claim fails.

¶ 35　　　　　　　　　　　　III. CONCLUSION

¶ 36　　　　Since neither of defendant's claims were possessed of either legal or factual merit, the trial court did not err, and we affirm the judgment of the trial court, dismissing defendant's postconviction petition at the first stage.

¶ 37　　　　Affirmed.